The first argued case this morning is number 18-2100, Hollingsworth v. Department of Veterans Affairs. Mr. Magri, can you hear us all right? Yes, I can, thank you. And can everyone on the panel hear? Yes. Mr. Magri, can you hear? Actually, we have a speaker here. Can you hear what he's saying? It's a little muffled, Your Honor, but as long as he speaks up, I can hear you. Let's put the speaker up here. I think that will be all right for us. There's a microphone right here. Oh, is that it? That he's coming through on the microphone? He's coming through here, but he'll come here to the microphone. Go ahead and say something. Yes, well, let's start the argument, and if it turns out that there are communication or understanding problems, we'll readjust. Thank you, Your Honor. Okay, so Mr. Magri, please proceed if you're ready. Okay, and good morning, Your Honor. I understand the first part of my argument is for 10 minutes and reserve five. That's right. It is undisputed that the petitioner was terminated while on military leave in the Uniformed Services. Yes, and would you clarify for us, because it wasn't so clear to me in the brief. At first, I assumed that she was just away for a few days, but how long had she been on military leave when the termination was done? She had left, I believe it was March 17th. I believe it's Appendix 0676 contains some of that specific information, but she left in March, I believe it was the 17th, and she received the termination notice and filed a claim with the Department of Labor. She filed a Department of Labor claim on August 8th. She received the termination notice a few days before that. So, she had been away and out of the case for all that time? Oh, yes. She was in the Air Force and they were involved in critical flying missions for injured people and also with evacuation things from certain areas where there were national interest disasters. So, as a result, some of those outside... Counsel, can you hear us? Can you hear Judge Wallach? I can. Okay, first thing you have to figure out how to do is not talk when the judge is talking. I'm sorry. We discussed it might be a problem because you can't see us, but explain to me from the record, when was the decision made to terminate Ms. Hollingsworth? July of 2017. Okay, and when was that instituted? When was the request made to terminate her? I don't believe that's instituted. It was instituted on July 17th. It relied on evidence that went right up to July 6th. In fact, the agency argues the strongest about an alleged privacy violation that was not found until July 6th, 2017. There was a request for termination that was made on December 20 by someone who did not have the authority to terminate and testified that that wasn't a final decision by that determination decision was based on most of the evidence, in fact, was after the December 20, 2016 date. It was in January, February, March, April, June, and July. Now, so from March 17th until this letter was received at her mail to her home address, is that what happened? It was mailed to her mother's address. So it was mailed, so it was received by someone in her family who said you have a letter and said in five days that's the end. And was there any interaction at all during this period while she was on military duty? Well, there was interaction. For example, she was docked for benefits under the VA rules and military laws. She didn't have to pay. But did she know? Yes, she learned of that and complained about that while she was away because she'd received a message saying that her pay was being docked. So there was communication between them. They knew precisely where she was. When she left for military leave, she told them the day, which originally was about 30 days out, but that was extended by the military because of their needs until September 6th, and she gave them notice of the extension until September 6th. And all of this is summarized in the Department of Labor USERRA complaint that you filed as well as in the MSPB filing, and those are in the area of Appendix 0678. There are pages before and that as well. Mr. Magrie? There's no doubt, Counsel. Judge Lynn has a question. Mr. Magrie, this is Judge Lynn. You argue in your brief that she was entitled to notice because the USERRA provision that applies to her specifies that she can only be terminated for cause, correct? I didn't argue that she was entitled to notice. I argued that she was entitled to cause. You're not arguing, are you, that she's entitled to the same formalities of a forecaused showing? That the agency argues or that the administrative judge argued were applicable under a different statute? No, I wasn't making that argument. Never have. It's not in any filing that she's made with USERRA, with the MSPB. She has always maintained her rights under USERRA 4311 and 4312-18. That's what she argued for. And cause is what is required by 5 CFR 353-209. Well, it's clear from the record, is it not, that the agency did have non-pretextual reasons unrelated to her military service for terminating? Oh, it absolutely is not. They never attempted to establish anything other than a probationary termination. The record itself is a disaster in the nature of how it addressed cause. Because the decision by the AJ was based solely on whether or not this was a probationary termination. In other words, which is basically a discretionary... Counsel, let me ask you a couple of questions. This is Judge Wallace. Yes. As it pertains to Ms. Hollingworth's allegation concerning the two-week long delayed request for military leave, how many times did Ms. Hollingworth... I know she asked, okay, and then two weeks later she sent a notice saying, in effect, hey, what's going on? Were there any other times within that two-week period? You know, she actually filed a harassment complaint on December 14th, if that's within the two-week time period, yes. And it was the period from initial request. Counsel, listen. Was that harassment complaint a leave request? That harassment complaint involved the fact that she had not had her leave request granted. And it was made to the agency, not outside the agency. My understanding of the record is that when she made her second request, and as I recall it was by email, the response was almost instantaneously saying you're going to get your leave. Is that not correct? That email exchange occurred, but the leave was not granted. And as far as the record goes, there was conversation with the... Wait, wait, wait, wait, wait. Answer questions, okay? I know it's difficult because you can't see us. Yeah. So you're saying that she never received leave? She received the approval of leave after she returned from the military, the physical that she had to take. And according to the testimony of the administrative officer, that occurred because the administrative officer told Donna Griffin Hall that she could not deny the request. Counsel, if you extend your answers beyond... I'm sorry. You simply got to lose time, that's all. You're already under your rebuttal time. Where in the record is best evidence or proof that... Well, let me ask you this. What came of the harassment complaint that was submitted on December 14, 2016? I note in the record some discussion of a proposed mediation. Was that the way in which it was resolved? It was investigated by a supervisor named Christine Brown. Do you have the... Was it resolved? You say it was investigated. Well, she took a statement from each party, and Brown said that because leave was granted, that would be the end of that one. Okay, so is it your position it was resolved? Well, it's that she got the leave. Okay. Yes, she did. Okay, turning to Joint Appendix 2817, do you have that in front of you? I'm sorry, I've got a wrong number there. Just go ahead. The position here is, you know, there were claims. You're asking me about a claim that was made before the termination claim, and the termination claim required cause and should be reversed. And what the agency did here is not only a probationary termination as opposed to a cause termination. The reason for 353-209 is that if one has a... without cause, then it allows the agency to avoid not only 353-209, but avoid the burden of proof it would have under 5 CFR 1201.56, friend small b, two little i's. It allows the agency to avoid, most importantly, reemployment rights, which is why OPM describes that regulation as being protection for re-employment of rights. And that's exactly what happened here. The agency, while she was on leave, should have required that any decision be made after she returned from leave, subject, of course, to re-employment rights. By not doing so, they denied her her re-employment rights. I think that is, quite frankly, open and shut in this case. As far as the initial claim she made, which rise or fall on whether there was discrimination, you know, I believe that once it's determined that the... I make many arguments in the brief concerning the evidence with regard to those initial claims. I believe the exclusion of evidence by the judge was violative of the law. You should know that there are other views of the record, counsel. I do. I do. I know the judge gave a view of the record. I know the agency has given a view of a record, and I've responded to that record. Okay, so let's hear from the government, and we'll save you rebuttal time, Mr. Magritte. Thank you. Ms. Kristeniak. Thank you, Your Honor. I think that it would be very helpful to us if you were to, at the threshold, clarify the government's position about whether for an employee in the probationary period, as we have here, is subject to the probationary rules, or whether the USERRA, which by its text seems to be broader and to require cause when the issue is raised under USERRA, as it is here. Yes, Your Honor. So here we have a situation where the actions taken by the agency are in accordance with both the requirements of the Civil Service Reform Act, which is mandatory language that says that they shall evaluate a probationary employee for their fitness before retaining them and entitling them to the greater benefits. Under Chapter 75, and USERRA, which says the determination shall not be associated with anything to do with their military leave, but rather only for cause. Here the agency, in making the determination to terminate her, compiled a termination record that had eight different instances in it of conduct that she had engaged in, which was the justification for her termination. I will note Mr. Magritte had indicated that there were events in the file that occurred in April and June, as he indicated she was on military leave at that time, so there were not events from April and June in that file. I would direct the court to the appendix at pages 1576 through 1653, which is the full termination packet that was received by HR and considered by HR pursuant to the policy of the agency. But you're talking about the substance of whether, in fact, there was cause. And I think we need to establish, because there wasn't anything in your briefs, or that we found, at least at this stage, saying that when your claim is under USERRA, you nonetheless are subject to the probationary rules, in which case the substance, the merits, don't count during the first year. But otherwise, the question of whether she received notice and all the rest of it, being away for four months on military leave, is quite a complex issue. And I gather from your briefs that you keep trying to say it doesn't matter, because during the probationary period there just aren't any appeal rights. Forget it. So there are obviously appeal rights. Except for the very limited political reasons and so on that are not here raised by anybody. Yes. I would direct the court to regulation from USERRA at 5 CFR 353.108. Does it say anything about probationary employees? But it says that if during the period of injury, because that section also relates to compensable injury during a job, or the performance of uniform service, conduct is such that it would disqualify him or her from employment under OPM or agency regulations, then restoration rights may be denied. And so we read that regulation to mean that, of course, USERRA means you cannot terminate them for anything related to anti-military bias. If they need to leave their job and go and serve in their reservist capacity, they absolutely must be permitted to do that. However, that does not obviate the requirements of the Civil Service Reform Act. The Civil Service Reform Act exists so that agencies have an opportunity to spend a year with these employees and get to know them and see if they're the right fit with the agency before they are subject to the heightened termination requirements under Chapter 75. And so here what happened in the agency and what the AJ at the MSPB did was an interpretation of those two statutes that harmonizes them, essentially. Pardon me, but it seems to me from this record that the cause exists no matter how you look at it. The communication, right really from the beginning, the communications with subordinates, the communications with superiors, the taking a position that you're entitled to a GS-13 slot when statutorily you can't fill that GS-13 unless you've been a GS-12 for at least a year. And that's fine if you simply assert the existence of that and somebody says no, you're incorrect, but rather aggressively saying that your failure to place me into this GS-13 position is in fact evidence of discrimination. All of that says to me it's for cause. Under a USERRA, and by the way, I was a brigade JAG for six years and did a lot of USERRA work, and this just screams cause. Absolutely, Your Honor, and that's the reading of the two regulations we would urge the court to, one that permits an agency to fully operate under the Civil Service Reform Act. But if someone is to be removed for cause, you have to comply with the cause requirements. You have to give a notice of proposed removal, an opportunity to respond, perhaps in some cases at least, some sort of performance improvement plan. Instead, you write a letter and say school's out, your last day is whatever it is three days from now. So the Civil Service Reform Act and the USERRA, neither of them require any of that. Obviously, the probationary employees are not entitled to notice or to counseling. And I would point the court to the state version of the USERRA statute, which appears at 20 CFR 1002.248, which does include that framework that Judge Newman, you're talking about, which is notice and a determination that it's reasonable. That language is in the private sector one. It's not in the federal employee version of the statute. But she was removed on the probationary principle that during the first year, person can be removed, that ends it. And we're writing you a letter and saying no bother to come back from your military leave. And so the procedure that was followed was the procedure that perhaps is used for probationary employees. But we're told there was cause. But she wasn't removed under the procedures that the government has established for removal for cause, even though there's a good deal, as Judge Wallach has mentioned in the record, saying that this was an appropriate removal for cause. So I think we have to resolve the threshold, the question of whether when there is a USERRA issue, that you're entitled to the procedures of removal for cause or not. So we would argue that not, because probationary employees are not entitled to the protections of Chapter 75. Section 20 of the CFR, which, again, relates to USERRA within the private sector and state governments, specifically sets out that there must be notice and a determination of reasonableness. And then we have the federal statute or the federal regulation that just says for cause. And so the requirements of that are that there must be some cause. It must not be associated in any way with their requirement to perform their military service. But there is not this requirement for notice. And this court obviously has not addressed this question before. So you're saying the only requirement is a reasonableness requirement, not a notice requirement. So I think the court does not necessarily need to set the basement here, right, and decide exactly how low the cause must be in order to be in agreement with USERRA and the Civil Service Reform Act. Because, as Judge Wallach has pointed out, there is ample evidence within the record that there was a significant amount of cause here. And so it's not, it's, again, this court has not addressed that issue. We cited in our brief two MSPB cases that deal with precisely this issue. One from 2007, Boucher, that said that it was a sufficient reason is what cause means within specifically this. But what are you telling us? We don't see, there is no basis for appeal of probationary removals, unless it's for political reasons or whatever, marital discrimination. So we don't see, we don't decide whether it's reasonable or not. You're telling us that it was reasonable, but that's not the question. The question is, in the first place, is this appealable under the standard removal for cause procedures which have access to this court? And if so, how come she was not given notice and opportunity to respond? And all of the things that we've been seeing all these years and that the statutes require for federal employees. So, again, our position is that the larger statutes under Chapter 75 are not applicable here. To the extent the court wanted to apply perhaps the standard that applies to the private sector, again, we would argue that it's because that language does not appear in the federal regulations, it should not apply here. But that language in 20 CFR says that the express notice, which is expressed, or can be fairly implied. So if we look at Ms. Hollingsworth here, she received a notice in November 17th of 2016, a memorandum of counseling from her supervisor saying that you're engaging in inappropriate communications. She was given notice, she was fired. She was not given an opportunity to respond. She said that your last day is, whatever it is, five days from now, went in the mail, so that it wasn't even five days. And yes, because the language of USERRA does not specifically imply that employees who are subject to USERRA are not required to comply with the requirements of the Civil Service Reform Act. And that is something that Congress could have done. My take on this is that USERRA protects against anti-military bias, which you see all the time in the private sector. And sometimes in the government. But even in the VA? I mean, this is the other side. The employer is the VA to say there's a military bias. No, it protects against anti-military bias. Well, yes. So if there was, and she's made an allegation of that, that's a legitimate B. And certainly she has a claim before this court. But the forecaused part has to take into account the reasons that you can terminate someone in their employment. And if the reason is because they just took the job and it turns out they're not qualified and they're a pro, then you can do it that way. Yes. As long as you don't have an improper causation. Absolutely. And I would point the court to the MSPB decision. Opposing counsel has noted that the language talking about cause appears in a footnote, but pages 9 through 19 in the appendix of that decision are 11 pages on exactly that issue that Judge Wallach just mentioned, which is this idea that it was a pretext for firing her. So he walks through the A.J., walks through all six or seven pretextual reasons that she asserted, addressed each one in turn. And the obvious other side of that, if you determine that it's not a pretext, that means you're determining that there was actually cause that these events actually did occur. So are you telling us that these considerations just don't apply because this was in the probationary period? Absolutely not, Your Honor. The MSPB was considering whether or not there was any anti-military bias associated with the decision to terminate her as a probationary employee. Well, why is the MSPB considering that if, in fact, the law is that any federal employee can be removed during the probationary period except for the two statutory considerations that everyone agrees don't here apply? Right. So the MSPB essentially found a reading of the two statutes that harmonizes the two of them, right? It made a determination of whether or not there was cause, said that there was, quote, ample cause for terminating her. And then, again, in a 23-page opinion, after hearing... But the agency didn't say that there was cause. Over and over, the agency keeps saying this is a probationary removal. Yes, I'm not sure that cause requires the agency to say we are making a termination for cause. They said this is a probationary removal because they don't want... They're not invoking the Chapter 75 requirements and Douglas factors and all of that analysis. But as I said, there is the termination packet that was presented to HR, which included the eight different instances of conduct that she had engaged in. But the USERRA statute does not say that probationary employees are not covered. The USERRA statute, just on its face, to achieve the purposes that Wallach has mentioned, puts the employees within the system. And if they're removed under USERRA, they're entitled to notice and an opportunity to respond. And there's absolutely no debate that that was not done here. The USERRA statutes do not say notice and opportunity to respond, Your Honor. It doesn't say either way. It does not say either way. That's the question. It's silent. And I think that the threshold question we need to decide is whether USERRA is also subject, that if you're a probationary employee, you can't appeal under USERRA either. Does the government disagree that if a probationary employee was terminated because their supervisor said, this person is in the armed force of the United States and I hate them, that when they got that notice of termination, they could take it up complaining about USERRA violation? Absolutely, Your Honor. Absolutely, we would agree with that. And that was the basis for the MSPB finding jurisdiction. The government did not assert that the MSPB did not have jurisdiction over Ms. Hollingsworth's appeal. A three-day hearing was heard. Almost 700 pages of trial testimony. Eighteen different witnesses came in and spoke to the AJ. And eventually he wrote a 23-page opinion. And that employee has an absolute right to make that claim. Absolutely. Absolutely, Your Honor. And that makes sense. But in that case, why doesn't that employee come under the standard rules of notice and an opportunity to respond? Here, Ms. Hollingsworth was removed under the probationary rules that school, as I say, it's over. Your employment's over. Don't bother to come back. Right. So I would point the court to the definition of employee under Chapter 75 at 5 U.S.C.A. 7501 that says employee is an individual in the competitive service who is not serving in a probationary or trial period. So she's not because she's a probationary employee and that's never been contested. That takes her out of the Chapter 75 notice and requirement. And then again, I would point the court to the fact that the private sector statutes or regulation does specifically say notice and reasonableness. And the public sector one does not say that, or the federal one specifically. And, of course, I see that my time is up, Your Honor. May I finish? Finish your sentence. And so the point of USERRA is to ensure that a military service member is not penalized for having served in any capacity for their military. Right. It does not mean that they are given an advantage above their colleagues. If their colleague, who is also probationary, could be terminated during their first year for conduct identical to what Ms. Hollingsworth engaged in, then Ms. Hollingsworth, too, must be permitted to be terminated for that reason. One quick question before you sit down. Of course. Just hypothetically speaking, if the circumstances here were somewhat different and the record showed that basically Ms. Hollingsworth's colleagues sort of concluded that, you know, she doesn't fit, let's let her go. And that's all they said. And just to make the hypothetical a little more interesting, there was also a memo that said, we're fine with the fact that she serves in the military. That's not our problem. We just don't think she fits. Right. Is that enough? Would that meet the required definition for cause? That would be a much closer case, and that's not something that this court – That's why I understand. Yes, I understand that, Your Honor. That would be obviously a much closer case because you're right. Then where does the language of CSRA that says does not fit in well or is not a great fit for the agency versus for cause, that I think the agency would have a lot more difficulty with. I'm not aware of any legal decisions addressing that specifically. And here, of course, as I've noted, there's eight instances of misconduct on her part that gave the agency significant cause for her termination during her probationary period. But under the law for probationary employees, we'd never look into that. That would never reach us. I don't know what might be before the MSPB, but that would not come under Chapter 75, and we'd never see it. It's not appealable. Correct. However, if there were a service member in that instance, they would be able to appeal under the USERRA provisions, which, of course, with that for cause language, they could – If they could assert it in good faith. Yes. If they could in good faith assert that it was just that I didn't fit in, it had nothing to do with what I did wrong in the office, and therefore that is not high enough to reach for cause, that certainly would be within MSPB's value weapon and something that this court could review on appeal. During the probationary period, no. Yes, Your Honor, yes. I mean, nobody contested the jurisdiction of Ms. Hollingsworth here to appeal her. This is really the problem. It looks as if the VA over and over kept saying, this is a probationary period, for whatever reason, if they thought she didn't fit. So being out of the office for four months and serving the military was perhaps a good excuse to write a letter and not get any back talk from what looked like a pretty strong personality. Certainly, if there were any evidence that the AJ had heard that the reason why she was terminated was because she was on an extended military leave, that would be a significantly different issue for this court. There was, again, over 700 pages of trial transcript, 18 witnesses that came and talked, and it's notable, Ms. Hollingsworth testified for – excuse me, Your Honor, I see – Well, what's notable is that AJ made determinations of credibility. He did. He did. And he determined that he credited the testimony of Ms. Shaw-Hillman and Ms. Donna Griffin-Hall, who were her supervisor and another woman who worked in the office, over Ms. Hollingsworth. Of nearly 150 pages of testimony from Ms. Hollingsworth, she – Those were issues of cause. Her testimony was about cause. She spoke about military animus for fewer than three pages in her over 150 pages of testimony that she actually gave before the AJ, at least those portions that have been included in the record before us. And so, really, the issue that the AJ was grappling with was that central issue, was there a pretext for terminating her, which is the question of, if there was no pretext, then there must have been cause. Any more questions? If there are no further questions, we respectfully request that the court approve – excuse me, affirm the decision of the MSPB. Thank you. Thank you. Mr. Magri, are you here? Do you have your full rebuttal time? I surely am, and I have three specific points I would like to make. First of all, the argument that the non-federal government employee definition that's in 20 CFR does not apply is accurate, but the concept that the cause standard in the OPM regulation includes the exact same thing is clear because Carter was the – Carter v. U.S., which is 407F2D1238 at 1245 D.C. CERD 1968, was a federal employee case and defined cause the precise same way. So when OPM defined cause, it didn't need to do what they did in the Department of Labor. The Department of Labor needed to do that because there was no definition at that point. Now, the second point is – Let me ask you a question, counsel. This is Judge Waller. I wanted to direct you previously to 2817 in the appendix. This will all clean up for me. It's in maybe the last volume. I have it. Okay. There's handwriting at the bottom of that page. Do you know whose that is? I'm not sure that I do, Your Honor. Okay. Thanks. The – and I would like to address a couple of other comments. The discussion about Chapter 75-03 is addressed in – or 01 – is addressed in our brief, both in the argument and if the courts look at the jurisdictional statement. The court has jurisdiction not only for under 75 – Chapter 75. It has jurisdiction under 38 U.S.C. Section Symbol 4324-D1. And that gives people the right to appeal re-employment rights. Now, Sarah, I would agree with Your Honor that discrimination is key if the claim is being made under Section 43-11 and – or A, which is discrimination, or B, which is retaliation. But when you have a case as here, which also included re-employment claims, that does not require the employee to show discrimination or – because the whole concept of the re-employment claim is that the employee needs to give time to be adjusted from military service to civilian service. And the statute recognizes that. And the regs try to protect that. So it doesn't require discrimination. It just requires cause. Counsel. Yes. This is Judge Wallach. Did Ms. Hollingworth continue until her termination to be employed by the government? Until her termination. That's a – that is – that's a question which I don't think was litigated here. It's a question of fact. But from the regulations, the answer is that if you make a re-employment claim, OPM regulations say that if you're terminated while on leave – You're not answering my question, counsel. I believe the concept of re-employment indicates that while on military leave, you're on military leave. And that is – you're working for the military at that point. And the – Was it the position of the government up until she was terminated that she was an employee of the United States? I think the position of the government is clear that at any point in time they could terminate her as a probationary employee. You're not answering my question. That's a factual question. I don't – I can't get into – all I can tell you about the government's position is what the government said and did. What they were thinking in their mind is not something I can address. They terminated her on a date. That's correct, right? In August? No, the date was July 17, 2017, but it was not – Counsel. Yeah. Prior to July 17, it was the position of the government that she was not terminated. Is that correct? Oh, yeah. So she – That's right. And the payroll records would reflect that. Yes. I mean, she was an employee in that – Reemployment rights. But when you are on military leave, you have the right to come back. And that's – and you see where it gives you that right. And it cannot be interfered with. If you have some complaint, if you have an alleged cause or anything else while someone's on military leave, you have to reinstate that employee and then try to address those claims. And the notice that people are talking about, while Chapter 75-01, et cetera, has a notice provision, the notice provision here comes in the cause language of USERRA, and it's set forth as the second requirement in both the 20 CFR and also the Carter decision. And that's the notice that Ms. Hollingsworth has been talking about. So – but the key here is when that – that was never litigated, the evidentiary was not part of the agency decision. It was never litigated before the AJ. The AJ made numerous evidentiary rulings that kept evidence out that related to those things and the reasonableness of the decision. And when you – what's at risk here for veterans is their reemployment rights. That is what's being violated. And so that's why they have a provision. And that's why OPM says protection of rights when it's talking about 353.209.  And the statute and the regs and the legislative history recognize that when people come back from leave, they need to have a period of time to adapt to the service, et cetera. And they want to protect all. All of this is well thought out by USERRA, and it's being ignored in the arguments that are being made by the agency. Okay. Thank you. Yeah, we need to think about it. So thank you, Mr. Magri, and thank you, counsel. The case is taken under submission.